UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOARDS OF TRUSTEES OF THE CEMENT MASONS & PLASTERERS HEALTH & WELFARE TRUST et al.,<br><br>Plaintiffs,<br>v.<br><br>LEEWENS CORPORATION,<br><br>Defendant. | CASE NO. 2:23-cv-01626-TL<br><br>ORDER ON MOTION FOR FEES AND COSTS |

This matter is before the Court on Defendant Leewens Corporation's Motion for Fees and Costs. Dkt. No. 24. Having reviewed the motion, Plaintiffs' response (Dkt. No. 27), Defendant's reply (Dkt. No. 29), and the relevant record, the Court DENIES Defendant's motion.

## I.   BACKGROUND

### A.   The Project

Plaintiffs' lawsuit arose from construction on the Seattle Aquarium Ocean Pavilion project. Dkt. No. 1 (complaint) ¶ 3.13. Defendant, one of many contractors on the site, installed

"fluid-applied floor coatings" on the project. Dkt. No. 17 (motion for summary judgment) at 10; *see* Dkt. No. 8 (answer) ¶ 3.3.

B.   **The Parties**

Plaintiffs (collectively, "Trusts" or "Trust Funds") are the Boards of Trustees for three Taft-Hartley trust funds: the Cement Masons & Plasterers Health & Welfare Trust; Cement Masons and Plasterers Retirement Trust; and Western Washington Cement Masons Journeyman and Apprentice Training Trust. *See* Dkt. No. 1 ¶¶ 1.1–1.3. The Trust Funds collect obligatory contributions from employers pursuant to "collective bargaining agreement[s] or other labor agreement[s]" between labor and management. *Id.* ¶ 1.5.

Defendant is Leewens Corporation, a Washington-based construction contractor that, relevant to this lawsuit, performs "resinous floor coating work." Dkt. No. 17 at 9. Founded in 1976, Defendant is a longtime player in the resinous floor coating game in Seattle. *Id.* at 10.

C.   **Seattle Community Workforce Agreement ("CWA")**

The CWA is a labor agreement that governs labor relations on public-works projects in Seattle and King County. *See* Dkt. No. 21-2 (CWA) at 14. It is a big-picture legal instrument that "seeks to stabilize wages, hours and working conditions for craft workers, to ensure workers on Covered Projects have the same working conditions, and encourages close cooperation between the City, Unions and Contractors, for a satisfactory, continuous and harmonious relationship between all involved on these projects." *Id.* at 15. While the CWA governs projects' larger labor issues and establishes the general rules by which labor and management must abide, the terms and conditions of employment between a contractor and the tradespeople it employs are generally governed on a granular level by a collective bargaining agreement between the contractor and the tradespeople's union.[1] *See id.* at 21.

---

[1] The CWA expressly does not require that workers be union members.

1    Prior to commencing any work on a public-works project, a contractor signs a Letter of
2    Assent that binds them to the CWA. *Id.* at 16. Of relevance to this case, upon assenting to the
3    CWA, a "[c]ontractor will contribute to, and hereby becomes party to and is bound by bonafide
4    [*sic*] pension, vacation, health and welfare, apprenticeship and training funds covering workers
5    under [the CWA]." *Id.* at 19. Plaintiffs here are three such funds. Defendant, "like all contractors,
6    assented to the [CWA]." Dkt. No. 17 at 12.

7    **D.    The Lawsuit**

8    On October 24, 2023, Plaintiffs filed a civil action, alleging that Defendant had employed
9    workers as Cement Masons on the aquarium project, but had not made required fringe-benefit
10   contributions to trust funds—i.e., Plaintiffs—associated with the Cement Masons' union. *See*
11   Dkt. No. 1 ¶¶ 3.5, 3.8; *see also* Dkt. No. 21-2 at 34 (binding Cement Masons' Local 528 to
12   CWA). That is, in performing some or all of its resinous floor coating work, Defendant had
13   performed "Cement Mason" labor and was therefore obligated to contribute to Cement Mason
14   trust funds. By failing to contribute, Plaintiffs alleged that Defendant had breached, *inter alia*,
15   the CWA and the Cement Masons' collective bargaining agreement. *See* Dkt. No. 1 ¶ 4.2.
16   Plaintiffs alleged further that Defendant's failure to make fringe-benefit contributions violated
17   ERISA. *Id.* ¶ 4.5. Plaintiffs sought past-due and delinquent fringe-benefit contributions,
18   liquidated damages, accrued pre- and post-judgment interest, and attorney fees. *Id.* at 8–9. Trial
19   was scheduled (Dkt. No. 11), and discovery commenced (Dkt. No. 10). On December 6, 2024,
20   discovery concluded. Dkt. No. 11.
21   On December 18, 2024, Plaintiffs moved to voluntarily dismiss the case under Federal
22   Rule of Civil Procedure 41(a)(2). Dkt. No. 14 at 1. Plaintiffs advised that, through discovery,
23   they determined that the amount they could potentially recover from Defendant was "modest"
24   and was not worth additional attorney fees and costs. *Id.* at 3. By January 6, 2025, the deadline

for the Parties to file dispositive motions, the Court had not yet ruled on the motion to dismiss, and Defendant moved for summary judgment that day. Dkt. No. 17. On January 21, 2025, the Court granted Plaintiffs' motion to dismiss and struck Defendant's motion for summary judgment as moot. Dkt. No. 23. The Court ordered Defendant to file any motion for fees and costs by March 7, 2025 (*id.* at 3), and Defendant did so, filing the instant motion on February 13, 2025 (Dkt. No. 24). Plaintiffs responded (Dkt. No. 27), and Defendant filed a reply brief (Dkt. No. 29).

## II. LEGAL STANDARD

Under Section 502 of ERISA, "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).[2] "[T]his provision does not limit the availability of attorney's fees to the 'prevailing party,'" but "a fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253–55. "[A] claimant can satisfy that requirement if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue." *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1120–21 (9th Cir. 2010) (quoting *Hardt*, 560 U.S. at 255)). "Only after passing through the 'some degree of success on the merits' door is a claimant entitled to the district court's discretionary grant of fees under § 1132(g)(1)." *Id.* at 1121.

//

//

---

[2] Paragraph (2), 29 U.S.C. § 1132(g)(2), is inapplicable to this case.

When deciding whether to exercise its discretion to award fees under Section 1132(g)(1), Ninth Circuit courts must consider the five factors set forth in *Hummell v. S.E. Rykoff and Company*, 634 F.2d 446, 453 (9th Cir. 1980). *Simonia*, 608 F.3d at 1121. The five factors are:

> (1) the degree of the opposing parties' culpability or bad faith;
> (2) the ability of the opposing parties to satisfy an award of fees;
> (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell*, 634 F.2d at 453. "No one of the *Hummell* factors . . . is necessarily decisive, and some may not be pertinent in a given case." *Smith v. CMTA-IAM Pension Tr.*, 746 F.2d 587, 590 (9th Cir. 1984) (citing *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984)); *see also Bunger v. Unum Life Ins. Co. of Am.*, 231 F. Supp. 3d 865, 870 (W.D. Wash. 2017) ("The *Hummell* factors do not require the Court to find that each factor weighs in support of fees because the factors 'reflect a balancing.'" (quoting *McElwaine v. US West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999))).

### III.    DISCUSSION

**A.    "Some Degree of Success on the Merits"**

As a threshold question, the Court must first determine whether Defendant achieved "some degree of success on the merits" and is entitled to consideration for attorney fees. *Simonia*, 608 F.3d at 1121. Here, Defendant argues that it "clearly obtained success on the merits because its motion for summary judgment convinced [Plaintiffs] to abandon all causes of action." Dkt. No. 24 at 16. Defendant asserts that its efforts resulted in "complete success" (*id.* at 17), as "after 18 months of defending itself[, Defendant] obtained a complete dismissal of all claims without paying a dime . . ." (Dkt. No. 29 at 6). Plaintiffs disagree. Plaintiffs argue that

Defendant's motion for summary judgment did not inspire them to dismiss the case; they assert that they gave notice of their intent to voluntarily dismiss the case four days *before* they became aware that Defendant intended to move for summary judgment.[3] *See* Dkt. No. 27 at 5. Plaintiffs assert further that "[Defendant's] success, if any, can only be described as procedural in nature, as prior to the motion to dismiss, [Defendant] did not take any action in this case." *Id.* at 6.[4]

   Neither side provides authority where a court encountered a similar procedural history to that presented here—that is, where a plaintiff's voluntary, post-discovery dismissal terminated the proceedings and mooted a defendant's motion for summary judgment—and then adjudicated the issue of whether a party had enjoyed "some" success. But Defendant correctly notes that a "lengthy inquiry" into the question is inappropriate. Dkt. No. 29 at 6 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n.9 (1983)). And Plaintiffs' observation that "[Defendant] fails to identify any successes on the merits" (Dkt. No. 27 at 6) is unconvincing, given that affirmatively scoring points is not necessarily a defendant's motivation in a civil action. *See CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016) (explaining that "[p]laintiffs and defendants come to court with different objectives," and that a "defendant has . . . fulfilled its primary objective whenever the plaintiff's challenge is rebuffed"). Certainly Defendant has seen Plaintiffs' challenge neutralized—albeit by Plaintiffs' own hands via a voluntary dismissal.

---

[3] This assertion is contradicted by the record. The email attached to the declaration of Noelle Dwarzski in support of Plaintiffs' opposition to Defendant's motion for fees reveals that Defendant's counsel wrote Plaintiffs' counsel on December 4, 2024, to confer "regarding the imminent motion for summary judgment" it was going to file and to lay out the grounds for its intended motion. Dkt. No. 28 at 5–7. But according to Dwarzski's declaration, Plaintiffs did not notify Defendant that they intended to dismiss the case until December 13, 2024, nine days later. *Id.* at 1 ¶ 3. The Court does not presume that Defendant's correspondence of December 4 necessarily motivated Plaintiffs' decision to dismiss. It certainly appears, however, that Defendant informed Plaintiffs about its intention to move for summary judgment *before* Plaintiffs informed Defendant about their intention to move for voluntary dismissal.

[4] It is not clear what Plaintiffs mean here. Prior to Plaintiffs' motion to dismiss, Defendant appeared in the case (Dkt. No. 6), filed a corporate disclosure statement (Dkt. No. 7), answered Plaintiffs' complaint (Dkt. No. 8), filed a joint status report with Plaintiffs (Dkt. No. 10), and moved with Plaintiffs to bifurcate the case (Dkt. No. 12). Plaintiffs' briefing here also indicates that Defendant participated in discovery. *See* Dkt. No. 27 at 14. All of this demonstrates that Defendant did indeed "take . . . action in this case."

1    Moreover, Plaintiffs' admission that, "[f]ollowing the completion of discovery, [Plaintiffs]

2    evaluated their case and concluded the costs of litigation exceeded the potential recovery amount

3    of contributions," indicates that Defendant's active engagement as an adversary at the very least

4    contributed to Plaintiffs' decision to quit the fight. *See* Dkt. No. 27 at 7.

5        The simple truth here is that Plaintiffs initiated this lawsuit intending to obtain from

6    Defendant fringe benefit contributions, liquidated damages, attorney fees, and pre- and post-

7    judgment interest. *See* Dkt. No. 1 at 8–9. Fourteen months later, having proceeded through the

8    end of discovery, they terminated the lawsuit having won none of these things. *See* Dkt. No. 14

9    at 3. If this does not represent a modestly successful outcome for Defendant, the Court is unsure

10   what would. Therefore, the Court finds that Defendant emerges with more than a "purely

11   procedural victory" and has achieved "some degree of success on the merits." *Simonia*, 608 F.3d

12   at 1120–21. Defendant is entitled to consideration for fees under 29 U.S.C. § 1132(g)(1).

13   **B.**     **The *Hummell* Factors**

14        Having found that Defendant has passed through the "some degree of success on the

15   merits door," the Court now applies the five *Hummell* factors to determine whether an award of

16   attorney fees and costs is appropriate. *Simonia*, 608 F.3d at 1121. "Although the *Hummell* factors

17   apply to both plaintiffs and defendants in ERISA actions, the Ninth Circuit has recognized that

18   they 'very frequently suggest that attorney's fees should not be charged against ERISA

19   plaintiffs.'" *Jackson v. Wilson, Sonsini, Goodrich & Rosati Long Term Disability Plan*, 768 F.

20   Supp. 2d 1015, 1021–22 (N.D. Cal. 2011) (quoting *Tingey v. Pixley-Richards W., Inc.*, 958 F.2d

21   908, 909 (9th Cir. 1992)).

22        Defendant does not employ the *Hummell* factors in presenting its argument for fees. *See*

23   Dkt. No. 24 at 6–17. Instead, Defendant focuses almost exclusively on Plaintiffs' alleged bad

24   faith in bringing the case in the first place; and on the weakness of the case once brought—that

is, the first and fifth factors. *See id.* Plaintiffs discuss each *Hummell* factor in their opposition to Defendant's motion (*see* Dkt. No. 27 at 6–12), an effort that Defendant attempts to rebut on reply in a half-page's worth of largely conclusory argumentation (*see* Dkt. No. 29 at 5–6). The Ninth Circuit has held that district courts "must" consider all five *Hummell* factors before exercising discretion to award fees under 29 U.S.C. § 1132(g)(1). *Simonia*, 608 F.3d at 1121. The Court will thus do so with the briefing it has.

### 1.     Factor One: Culpability or Bad Faith

The first *Hummell* factor examines "the degree of the opposing parties'"—in this case the Plaintiff Trust Funds'—"culpability or bad faith." *Hummell*, 634 F.2d at 453. The Ninth Circuit has not defined culpability or bad faith in an ERISA context, *see Oksana B. v. Premera Blue Cross*, No. C22-1517, 2024 WL 518897, at *2 (W.D. Wash. Feb. 9, 2024), but "[i]n order to avoid a finding of bad faith under the *Hummell* factors, plaintiffs must have a reasonable belief that they could prove an actionable ERISA claim," *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1236 (9th Cir. 2000). Here, Defendant asserts that Plaintiffs never had a viable ERISA claim, and that "Plaintiffs should have known, based on publicly available documents, statutory text, and published decisions, that [this] lawsuit was an improper use of ERISA." Dkt. No. 24 at 6. Plaintiffs argue that they filed a legitimate complaint under ERISA "to try to collect contributions for covered hours worked." Dkt. No. 27 at 7.

As an initial matter, the Court is concerned that Plaintiffs rely heavily on the fact that documentary evidence indicated that Defendant "reclassified several weeks of its certified payroll as having been performed by Cement Masons." Dkt. No. 27 at 6. However, this information was obtained during discovery (*see* Dkt. No. 14 (motion to dismiss) at 3; Dkt. No. 15 (Dwarzski Decl.) at 49–55) and does not at all answer the question of whether Plaintiffs had a

"reasonable belief that they could prove an actionable ERISA claim" at the time they filed their Complaint. *Cline*, 200 F.3d at 1236.

Plaintiffs' Complaint was thin and relied upon information and belief for the crucial allegation that Defendant's employees performed covered work. *See* Dkt. No. 1 ¶¶ 3.8, 3.13. However, a plaintiff may "plead[ ] facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Here, there was (and currently still is) a proceeding before the Washington State Department of Labor and Industries involving the classification of flooring work vis-à-vis Cement Masons and Laborers that could be relevant to this action. *See* Dkt. 27 at 2. The Parties' Joint Status Report states that "[i]t appears that this lawsuit was filed with advance knowledge of the Department's October 2023 determination." Dkt. No. 10 at 4. Further, the Parties' Stipulated Motion to Bifurcate points out that

> [u]nlike many ERISA cases where a subscription agreement or collective bargaining agreement bears the defendant's written contribution obligation to contribute to one specific trade, the asserted obligation here rests upon factual circumstances of the work performed on the Seattle Aquarium Project, and the application of the Seattle Community Workforce Agreement, to those facts.

Dkt. No. 12 at 2. Finally, Defendant makes much of the fact that it promptly sent a Rule 11 letter to Plaintiffs highlighting the flaws in their case upon filing and reminded them of the Rule 11 issue throughout the litigation. *See* Dkt. No. 25-1 (Rule 11 letter); Dkt. No. 24 at 6. But the fact remains that Defendant did not file a Rule 11 motion, or even a motion to dismiss. Instead, Defendant chose to answer the complaint (Dkt. No. 8) and proceed through discovery, indicating that perhaps the issue was not quite as clear-cut as it had made it out to be in its letter. Taking

these facts into consideration, while close, "the [r]ecord contains enough documentary material to support the Court's conclusion that a reasonable basis existed for [Plaintiffs] to make their claims." *Cline*, 200 F.3d at 1236.

Therefore, this factor weighs against an award of fees.

### 2. Factor Two: Ability to Satisfy an Award of Fees

The second *Hummell* factor examines the ability of Plaintiffs to satisfy an award of fees. *See Hummell*, 634 F.2d at 453. Here, Plaintiffs concede that "the Trusts may have the resources to satisfy an award of fees." Dkt. No. 27 at 11. But Plaintiffs also argue that "the equities weigh against an award." *Id.* While this may be so, Plaintiffs do not provide any case law indicating that it is appropriate for a Court, when applying the second *Hummell* factor, to weigh the equities associated with a party's ability to satisfy an award of fees. On its face, the second *Hummell* factor is one-dimensional: either a party can, or cannot, afford to pay. The relative *fairness* of assessing fees is beyond the scope of the inquiry, as the Ninth Circuit has defined it.

Plaintiffs try to illustrate the inequity of an award against them by pointing out that paying fees here would contravene the purpose of ERISA. Plaintiffs argue that the statute itself counsels against an award of fees, asserting that under the law, "the Trusts are to use their assets to provide benefits to participants and their beneficiaries and defray reasonable expenses." *Id.* (citing 29 U.S.C. § 1103). But even this indirect approach fails, as court-ordered attorney fees assessed against Plaintiffs after unsuccessful litigation would surely be considered "reasonable expenses," especially if, as Plaintiffs vehemently maintain, that litigation were pursued in good faith, authorized by statute, and undertaken with an eye toward recovering money validly owed to them under an allegedly breached labor agreement. *See* 29 U.S.C. § 1132(a)(1)(B). This is not

to say that the equities of an award are never relevant in analyzing a fee request, but Plaintiffs have not presented such a situation here.[5]

Defendant does not weigh in on the issue, but in its reply brief highlights Plaintiffs' concession that they can satisfy an award of fees. Dkt. No. 29 at 6.

Therefore, this factor weighs in favor of an award of fees.

### 3. Factor Three: Deterrence

The third *Hummell* factor examines whether an award of fees against Plaintiffs would deter others from acting under similar circumstances. *See Hummell*, 634 F.2d at 453. Defendant does not discuss deterrence in its motion and only brings up the issue in one sentence in its reply brief, asserting that "[a]n award of fees would deter other funds from using ERISA as a 'jurisdictional stalking horse.'" Dkt. No. 29 at 6 (quoting *R.I. Carpenters Annuity Fund v. Trevi Icos Corp.*, 533 F. Supp. 2d 246, 252 (D.R.I. 2008)). For their part, Plaintiffs do not address this factor in their briefing.

Because the Court has found that Plaintiff had a reasonable basis for bringing this action, *see supra* Section III.B.1, there is no conduct here that should be deterred. Therefore, this factor weighs against an award of fees.

### 4. Factor Four: Beneficiaries of Litigation/Significant Legal Question

The fourth *Hummell* factor examines "whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA." *Hummell*, 634 F.2d at 453. This factor is "more appropriate to a determination of whether to award fees to a plaintiff than a defendant." *Tingey*, 958 F.2d at 910

---

[5] While district courts must consider the *Hummell* factors before exercising their discretion to award fees under Section 1132(g)(1), the Ninth Circuit has characterized the factors not as a dispositive test but as "a helpful guideline to both district courts and litigants." *Simonia*, 608 F.3d at 1121. Therefore, while the factors are a mandatory list of issues to be considered, they are not necessarily an exclusive list, depending on the circumstances of a case.

(quoting *Marquardt v. N. Am. Car Corp.*, 652 F.2d 715, 719 (7th Cir. 1981)). Further, Defendant does not address the issue in its motion, limiting its discussion to one conclusory sentence in its reply brief: "[Defendant] was not only defending itself, it was defending its current employees who earn their livelihood as members of the Laborers union." Dkt. No. 29 at 6. While this may be so, it demonstrates that ERISA was not Defendant's *per se* motivation in defending itself. That is, Defendant has consistently framed this case as a defense of its purported contractual right to assign resinous flooring work to the trade of its choice, not a defense of the integrity of workers' right to bargained-for fringe benefits, the stated purpose of ERISA. *See, e.g.*, Dkt. No. 17 at 12–15; *see also* 29 U.S.C. § 1001.

As to whether Defendant sought to resolve a significant legal question, neither party addresses the issue in their respective briefing. Given the Parties' apparent disinterest in identifying a significant legal question here, the Court will not seek to unearth one.

Therefore, this factor weighs against an award of fees.

### 5. Relative Merits

The fifth *Hummell* factor examines "the relative merits of the parties' positions." *Hummell*, 634 F.2d at 453. To tip the balance here, it is not sufficient for a party's position to have been "incorrect"; it must have been "unmeritorious." *See Honolulu Joint Apprenticeship & Training Comm. of United Ass'n Loc. Union No. 675 v. Foster*, 332 F.3d 1234, 1239 (9th Cir. 2003) (quoting *Hope v. Int'l Bhd. of Elec. Workers*, 785 F.2d 826, 831 (9th Cir. 1986)).

There is documentary evidence in this case that, on its face, tends to show some merit to Plaintiffs' position (albeit not enough to have proceeded further with the litigation). Specifically, Plaintiffs assert that Defendant "reclassified several weeks of payroll to Cement Masons following the issuance of the prevailing wage determination articulating the type [of] work performed on the Project is performed by a 'mixed crew' of laborer and cement masons." Dkt.

No. 27 at 7. As a result of this alleged reclassification, the payroll records show that "[Defendant] indicated Cement Masons performed the work for those weeks and became liable for contributions to [Plaintiffs] for Cement Masons work." *Id.* This assertion comports with the record. Payroll records identified by Plaintiffs indicate that Defendant classified (or re-classified) at least 157 hours of work on the Seattle Aquarium Ocean Pavilion project as "Cement Masons." Dkt. No. 15 at 49–55.

Defendant's rebuttal is that the payroll records are not all that they appear to be. Notwithstanding the entries on the payroll reporting forms that clearly classify 157 hours of work as "CEMENT MASONS / Journey Level / Type: Heavy," Defendant asserts that "[t]he hours were never reclassified as Cement Masons' work." Dkt. No. 29 at 3. Defendant argues:

> [Defendant] objects to the persistent allegation that [Defendant] ever assigned or classified any work to Cement Masons. As Patrick Leewens described in his deposition, [Defendant's] customer who had a contract with the Cement Masons (unlike [Defendant]) wanted to placate the Cement Masons. It asked [Defendant] to pay the difference for the last few hours of the project to keep the peace. Payment of a higher wage, to a Laborer for Laborer work, is not any type of admission, and does not create any obligation to contribute.

*Id.* Irrespective of which Party would prevail on this issue—a question made moot by Plaintiffs' voluntary dismissal of the case—the salient point for the Court here is that Defendant feels obliged to make this argument in the first place. The fact that Defendant is even in the position of refuting documentary evidence is demonstrative that Plaintiffs' case had some merit. Defendant is effectively telling the Court that its own payroll reports are unreliable on their face, and that they cannot be properly understood without also considering the deposition testimony of Defendant's company president. This is not a strong position from which to argue, as Defendant does, that Plaintiffs' case was entirely baseless. *See* Dkt. No. 24 at 7.

ORDER ON MOTION FOR FEES AND COSTS - 13

Further, Defendant's argument on the reclassification issue is so oblique that its relevance escapes the Court. Defendant presents the Court with four ideas: "Defendant's customer who had a contract with the Cement Masons," "placat[ing] the Cement Masons," "paying the difference"—between what is not clear—"for the last few hours of the project," and "keep[ing] the peace." *Id.* But it is not clear what these things have to do with one another. And it is equally unclear why that purported relationship should compel the Court to interpret the words "CEMENT MASONS," as they appear in the "work classification" column on the payroll records, to mean something other than, well, "cement masons." *See* Dkt. No. 15 at 49–55. The Court does not here imply or suggest that Defendant's conduct was suspicious or untoward. It was, however, sufficiently unexplained as to be an appropriate subject for litigation. Plaintiffs' case was neither frivolous nor unmeritorious. And given the unexplained payroll records that Defendant has tried—and failed—to explain, it was not, on this record, at this procedural posture, substantially weaker than Defendant's.

Therefore, this factor weighs against an award of fees.

\*   \*   \*

Having considered the five *Hummell* factors, the Court finds that Defendant is not entitled to an award of fees or costs under 29 U.S.C. § 1132(g)(1).

### C.     Attorney Fees Under 28 U.S.C. § 1927

Defendant also argues that Title 28's "catch-all" attorney-fees statute should apply here. Dkt. No. 24 at 17. Section 1927 authorizes a court to order an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Defendant does not provide any case law where a court ordered an attorney to make such payment.

Under Ninth Circuit precedent, it is inappropriate to apply Section 1927 here. "Because [Section 1927] authorizes sanctions only for the 'multiplication of proceedings,' it applies only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co., Secs. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). "[Section 1927] cannot be applied to an initial pleading." *Id.* Defendant here does not identify how Plaintiffs multiplied proceedings, let alone did so vexatiously. A review of the docket reveals a relatively straightforward procession from pleading, to discovery, to voluntary dismissal. Plaintiffs did not amend their pleading, nor did they file any discovery motions. Indeed, Plaintiffs agreed to bifurcate this action "to avoid unnecessary expenditures by all parties." Dkt. No. 12 at 2. Not long after discovery ended, Plaintiffs moved to voluntarily dismiss their case. Section 1927 sanctions are thus not warranted.

### IV. CONCLUSION

Accordingly, Defendant's Motion for Fees and Costs (Dkt. No. 24) is DENIED.

Dated this 12th day of May 2025.

Tana Lin
United States District Judge